1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

                            ----oo0oo----

11

12   PATRICK HAMMOND III,              CIV. NO. 1:15-00391 WBS SKO

13              Plaintiff,             MEMORANDUM AND ORDER RE: MOTION
                                       TO DISMISS
14        v.

15   SALLY JEWELL, Secretary of
     the U.S. Department of the
16   Interior; INTERIOR BOARD OF
     INDIAN APPEALS, U.S.
17   Department of the Interior;
     AMY DUTSCHKE, Regional
18   Director, Pacific Regional
     Office, Bureau of Indian
19   Affairs; TROY BURDICK,
     Superintendent, Central
20   California Agency, Bureau of
     Indian Affairs,
21

22              Defendants.

23
                            ----oo0oo----
24

25             Plaintiff alleges he was ousted from the leadership of

26   the Picayune Rancheria of Chukchansi Indians Tribe in violation

27   of tribal law and brought this suit against numerous federal

28   defendants seeking reinstatement to the Tribal Council.

                                    1

1  Presently before the court is defendants' motion to dismiss for

2  lack of subject matter jurisdiction pursuant to Federal Rule of

3  Civil Procedure 12(b)(1) and for failure to state a claim

4  pursuant to Rule 12(b)(6).

5  I. Factual and Procedural Background

6         Plaintiff was elected to the Tribal Council of the

7  Picayune Rancheria of Chukchansi Indians Tribe in December 2008.

8  (Compl. ¶ 10.)  After initially suspending plaintiff from the

9  Tribal Council for alleged violations of the tribal Ethics

10 Ordinance, the Tribal Council permanently removed him on June 17,

11 2011 after a hearing.  (Id. ¶¶ 13-14.)

12         Following the December 3, 2011 election, three factions

13 were embroiled in a power struggle over tribal leadership,

14 resulting in legal disputes in the Tribal Court and even

15 violence.  (Id. ¶¶ 19-23.)  Plaintiff was not a member of any of

16 the factions and it does not appear that their leadership

17 disputes were related to plaintiff's removal from the Tribal

18 Council.  Asserting conflicting claims of leadership, all three

19 factions submitted contracts under the Indian Self-Determination

20 and Education Assistance Act ("ISDEAA") to the Bureau of Indian

21 Affairs ("BIA").  (See id. ¶ 23; Defs.' Ex. B. at 1 ("Feb. 11,

22 2014 BIA Decision") (Docket No. 16-2).)

23         The BIA Superintendent returned the contract requests

24 from all three factions and concluded it would recognize the

25 results of the disputed December 1, 2012 election.  (Feb. 11,

26 2014 BIA Decision at 6.)  All three factions appealed the

27 Superintendent's decision and the BIA Regional Director affirmed

28 the decision to return all three contract requests, but vacated

1   the decision to recognize the results of the disputed election

2   because the BIA did not have "the authority to determine which of

3   the opposing factions['] interpretation of the Tribe's law is

4   correct." (Id.)  The Regional Director determined that

5   "recognition of a government is essential for the purpose of

6   contracting under the ISDEAA and that the BIA "will conduct

7   business, on an interim basis, with the last uncontested Tribal

8   Council elected December 2010." (Id.)  The Regional Director did

9   not identify plaintiff as a member of that Tribal Council because

10  "[t]he record reflects that Nokomis Hernandez was appointed by

11  the Tribal Council to replace Patrick Hammond, III." (Id. at 3

12  n.3.)

13          Two factions and plaintiff appealed that decision to

14  the BIA Office of Hearings and Appeals and a two-judge panel

15  concluded that exigent circumstances justified making the

16  Regional Director's decision to recognize the 2010 Tribal Council

17  "for government-to-government purposes" effective immediately.

18  (Defs.' Ex. C at 5 ("Feb. 9, 2015 BIA Decision") (Docket No. 16-

19  3).)  Although plaintiff had appealed "the Regional Director's

20  acceptance of his subsequent removal from the Council and

21  replacement," the panel did not address the merits of that

22  dispute in its February 9, 2015 decision.  (Id. at 5 n.2.)

23          Plaintiff initiated this lawsuit, alleging he was

24  "unethically and unconstitutionally removed from his position on

25  the Tribal Council." (Compl. ¶ 15.)  He further alleges that he

26  attempted to seek help from defendants in resolving his allegedly

27  wrongful removal, but defendants "failed to exercise their

28  inherent authority to correct this manifest injustice and error."

3

1    (Id. ¶ 17.)   Plaintiff asserts claims for violations of (1) 42

2    U.S.C. § 1983 based on a denial of procedural due process; (2)

3    the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302; and (3)

4    the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 et seq.

5    He asks the court to vacate the February 11, 2014 and February 9,

6    2015 BIA decisions, declare that his removal by the Tribal

7    Council was invalid and void, and declare that he is a member of

8    the Tribal Council.  (Id. at 8-9.)   Defendants now move to

9    dismiss the Complaint for lack of subject matter jurisdiction

10   pursuant to Rule 12(b)(1) or, alternatively, for failure to state

11   a claim upon which relief can be granted pursuant to Rule

12   12(b)(6).

13   II. Discussion

14        Rule 12(b)(1) authorizes a court to dismiss an action

15   over which it lacks subject matter jurisdiction.  When a party

16   challenges the court's jurisdiction, the party invoking its

17   jurisdiction bears the burden of proving that jurisdiction

18   exists.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,

19   376 (1994); Tosco Corp. v. Cmtys. for a Better Env't, 236 F.3d

20   495, 499 (9th Cir. 2001), abrogated on other grounds by Hertz

21   Corp. v. Friend, 559 U.S. 77 (2010).

22        On a Rule 12(b)(6) motion to dismiss, the court must

23   accept the allegations in the complaint as true and draw all

24   reasonable inferences in favor of the plaintiff.  See Scheuer v.

25   Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

26   Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S.

27   319, 322 (1972).  To survive a motion to dismiss, a plaintiff

28   must plead "only enough facts to state a claim to relief that is

4

1  plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

2  544, 570 (2007).  This "plausibility standard," however, "asks

3  for more than a sheer possibility that a defendant has acted

4  unlawfully," and where a plaintiff pleads facts that are "merely

5  consistent with a defendant's liability," it "stops short of the

6  line between possibility and plausibility." Ashcroft v. Iqbal,

7  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

8       A.   Section 1983 and ICRA Claims

9          "Internal matters of a tribe are generally reserved for

10  resolution by the tribe itself, through a policy of Indian self-

11  determination and self-government as mandated by the Indian Civil

12  Rights Act." Timbisha Shoshone Tribe v. Kennedy, 687 F. Supp. 2d

13  1171, 1185 (E.D. Cal. 2009) (O'Neill, J.).  A district court thus

14  generally lacks jurisdiction to resolve matters of internal

15  tribal governance.[1]  Id.  As the BIA recognized in its February

16  11, 2014 decision, "the determination of tribal leadership is

17  quintessentially an intra-tribal matter raising issues of tribal

18  sovereignty."  (Feb. 11, 2014 BIA Decision at 6 (quoting Hamilton

19  v. Acting Sacramento Area Dir., 29 I.B.I.A. 122, 123, 1996 WL

20  ────────────────

           [1]   There is an exception where a tribe's own governing
21  documents vest federal agencies with ultimate authority over
   certain decisions.  Alto v. Black, 738 F.3d 1111, 1115, 1123 (9th
22  Cir. 2013) (recognizing that the BIA had authority to decide a
   membership dispute where the tribe's own constitution required
23  the BIA to approve the deletion of individual's names from
   membership).  The Constitution of the Picayune Reservation does
24  not vest the BIA with the authority to review internal tribal
   leadership disputes.  (See Defs.' Ex. A (Constitution of the
25  Picayune Reservation); see also Feb. 11, 2014 BIA Decision at 6
   ("There is no provision in the Tribe's Constitution or federal
26  law that provides the BIA with authority to determine which of
   the opposing factions['] interpretation of the Tribe's law is
27  correct . . . .").)

28

1  165057, at *2 (Mar. 12, 1996))); <u>see also</u> <u>In re Sac & Fox Tribe</u>

2  <u>of Miss. in Iowa/Meskwaki Casino Litig.</u>, 340 F.3d 749, 763-64

3  (8th Cir. 2003) (holding that the district court lacked

4  jurisdiction to resolve an internal tribal election dispute); <u>see</u>

5  <u>Timbisha</u>, 687 F. Supp. at 1185 (considering elections to be among

6  the internal affairs of the tribe that do not come within the

7  purview of review by federal courts).

8          Here, plaintiff's § 1983 and ICRA claims are based on

9  the allegation that his removal from the Tribal Council violated

10  tribal law, and his prayer for relief asks the court to order

11  that he be reinstated on the Tribal Council.  Because plaintiff

12  seeks "a form of relief that the federal courts cannot provide,

13  namely, resolution of [an] internal tribal leadership dispute,"

14  the court lacks jurisdiction over his claims.  <u>In re Sac & Fox</u>

15  <u>Tribe</u>, 340 F.3d at 763; <u>see also</u> <u>Timbisha</u>, 687 F. Supp. 2d at

16  1185 (holding that the plaintiff's claims were non-justiciable in

17  federal court because they would require the court to resolve the

18  parties' election dispute, an issue central to tribal self-

19  determination and self-government).  Accordingly, the court must

20  grant defendants' motion to dismiss plaintiff's § 1983 and ICRA

21  claims for lack of subject matter jurisdiction.[2]

22          B. <u>APA Claim</u>

23  _____

24          [2]    Plaintiff's ICRA claim also fails because "ICRA does
    not operate against the federal government."  <u>Cal. Valley Miwok</u>
25  <u>Tribe v. Salazar</u>, 967 F. Supp. 2d 84, 93 (D.D.C. 2013); <u>see also</u>
    25 U.S.C. § 1302(a)(8) ("No <u>Indian tribe</u> in exercising powers of
26  self-government shall-- . . . deny to any person within its
    jurisdiction the equal protection of its laws or deprive any
27  person of liberty or property without due process of law . . . ."
    (emphasis added).
28
                                        6

1    The APA permits a reviewing court to review a "final

2 agency action," 5 U.S.C. § 704, and "hold unlawful and set aside

3 actions, findings, and conclusions found to be . . . arbitrary,

4 capricious, an abuse of discretion, or otherwise not in

5 accordance with law."  Id. § 706(2)(A).  "The federal question

6 for § 1331 purposes is whether the BIA violated the APA; that it

7 is claimed to have done so in a case involving application of

8 tribal law does not matter, any more than it would matter to

9 § 1331 jurisdiction over an APA case involving an issue of state

10 law."  Alto v. Black, 738 F.3d 1111, 1124 (9th Cir. 2013).

11    Under the APA, "[a] person suffering a legal wrong

12 because of agency action, or adversely affected or aggrieved by

13 agency action within the meaning of a particular statute, is

14 entitled to judicial review thereof."  5 U.S.C. § 702 (emphasis

15 added).  "Section 702 does not create substantive rights.  There

16 is no right to sue for a violation of the APA in the absence of a

17 'relevant statute' whose violation 'forms the legal basis for

18 [the] complaint.'"  El Rescate Legal Servs., Inc. v. Exec. Office

19 of Immigration Review, 959 F.2d 742, 753 (9th Cir. 1991) (quoting

20 Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883 (1990)).

21    "Absent a statute with substantive standards, judicial

22 review is precluded because there is no 'law to apply [and] "no

23 meaningful standard against which to judge the agency's exercise

24 of discretion."'"  Eason Land Co., LLC v. Sec'y of U.S. Dep't of

25 Interior, No. 2:14-CV-00951-SU, 2015 WL 1538501, at *11 (D. Or.

26 Apr. 7, 2015) (quoting Or. Nat'l Res. Council v. Thomas, 92 F.3d

27 792, 798 (9th Cir. 1996) (alteration in original)); see also Pub.

28 Lands for the People, Inc. v. U.S. Dep't of Agric., 733 F. Supp.

1    2d 1172, 1180 (E.D. Cal. 2010) ("A claim that an agency acted

2    arbitrarily and capriciously for purposes of the APA cannot

3    'stand free of any other law.'  Instead, the APA provides a

4    mechanism for enforcing obligations arising under other

5    authority." (quoting Or. Nat'l Res. Council, 92 F.3d at 798)).

6        Here, plaintiff's Complaint does not allege what

7    statute provides the substantive standards to review the BIA's

8    decision and appears to allege only a deficient, free-standing

9    claim that the BIA's decision was "arbitrary and capricious" in

10    violation of the APA.

11        To the extent plaintiff relies on the Due Process

12    Clause as the "standard against which to judge the agency's

13    exercise of discretion," Or. Nat'l Res. Council, 92 F.3d at 798,

14    this claim must fail.  "To assert a procedural due process claim

15    under the Fifth Amendment, [the plaintiff] must first establish a

16    constitutionally protected interest.  [The plaintiff] must have

17    more than a unilateral expectation of it; instead, she must have

18    a legitimate claim of entitlement." Stanley v. Gonzales, 476

19    F.3d 653, 660 (9th Cir. 2007) (citing Bd. of Regents of State

20    Colleges v. Roth, 408 U.S. 564, 569-70 (1972)).  "Property

21    interests, of course, are not created by the Constitution.

22    Rather they are created and their dimensions are defined by

23    existing rules or understandings that stem from an independent

24    source such as state law-—rules or understandings that secure

25    certain benefits and that support claims of entitlement to those

26    benefits." Roth, 408 U.S. at 577.

27        Here, the system of tribal leadership and plaintiff's

28    ability and right to serve on the Tribal Council stem exclusively

1  from the Constitution of the Picayune Reservation.  (See Defs.'

2  Ex. A at arts. VII, X (Constitution of the Picayune

3  Reservation).)  Plaintiff cannot plausibly allege that any

4  federal or state statute or right gave him a legitimate claim of

5  entitlement to his continued service on the Tribal Council.  Cf.

6  Hoopa Valley Tribe v. Christie, 812 F.2d 1097, 1102 (9th Cir.

7  1986) (holding that even though a federal statute gives "Indians

8  . . . a preference for appointment to vacancies in the

9  administration of services or functions affecting Indians," such

10  as the BIA, the statute "did not create proprietary rights to

11  their jobs").

12          Even assuming the BIA decisions could be challenged

13  under the APA, plaintiff does not challenge the limited decision

14  the BIA reached in this case.  "The BIA, in its responsibility

15  for carrying on government relations with the Tribe, is obligated

16  to recognize and deal with some tribal governing body in the

17  interim before resolution of [] election dispute[s]."  Goodface

18  v. Grassrope, 708 F.2d 335, 339 (8th Cir. 1983).  In the

19  decisions challenged in this case, the BIA acted within its

20  limited authority to recognize tribal leadership on an interim

21  basis for the limited purpose of government-to-government

22  dealings.  As the BIA explained, it lacked the ability to resolve

23  the election disputes and expressly refrained from interfering

24  with the tribe's sovereignty in that respect.  (See Feb. 11, 2014

25  BIA Decision at 6 (recognizing that it "does not have the

26  authority to determine the Tribe's permanent leadership"); Feb.

27  9, 2015 BIA Decision at 5.)

28          Plaintiff does not challenge the BIA's decision

1   regarding whom to deal with in the interim for "government-to-

2   government" purposes while the Tribe resolves its leadership

3   disputes.  Instead, plaintiff seeks review of the BIA's <u>refusal</u>

4   to address the merits of his allegedly unlawful removal from the

5   Tribal Council in violation of tribal law.  (See Compl. ¶ 2

6   ("Review of the subject decision and subsequent determination to

7   make that decision effective is sought insofar as said decision

8   states that 1) the Tribal Council's removal of plaintiff from the

9   Tribal Council on or about June 17, 2011, is valid action; 2)

10  plaintiff is not a member of the Tribal Council pursuant to the

11  election held on December 5, 2010, and; 3) plaintiff is not a

12  member of the last undisputed Tribal council.").)

13       In <u>Goodface</u>, tribe factions similarly disputed a tribal

14  election and the BIA refused to recognize either faction and

15  indicated it would "deal with both councils on a de facto basis."

16  708 F.2d at 337.  The Eighth Circuit held that the BIA "acted

17  arbitrarily and capriciously by effectively creating a hiatus in

18  tribal government" and was "obligated to recognize and deal with

19  some tribal governing body in the interim before resolution of

20  the election dispute."  <u>Id.</u> at 338-39.  It further explained,

21  however, that the district court "should not have addressed the

22  merits of the election dispute" in reviewing the BIA's action and

23  "overstepped the boundaries of its jurisdiction in interpreting

24  the tribal constitution and bylaws and addressing the merits of

25  the election dispute."  <u>Id.</u> at 339.

26       Even if this court somehow interprets plaintiff's

27  allegations as attacking the BIA's decision that plaintiff was

28  not a member of the Tribal Council that it recognized for interim

1   government-to-government relations and that the decision is

2   subject to attack under the APA, the court could not assess

3   plaintiff's claims without "interpreting the tribal constitution

4   and bylaws and addressing the merits" of plaintiff's removal by

5   the Tribal Council.  Similar to the BIA, the court lacks

6   jurisdiction to engage in this inquiry.[3]  Id.

7       C.   Conclusion

8           In Lewis v. Norton, the Ninth Circuit observed that

9   "[t]he plaintiffs of course did not sue the tribe directly, but

10  filed this action against the federal agencies responsible for

11  the regulation of tribal affairs, including gaming.  They did so

12  because they recognized that tribal immunity would create, at the

13  least, a serious obstacle."  424 F.3d 959, 963 (9th Cir. 2005).

14  The Ninth Circuit explained that the plaintiffs' "efforts to do

15  an end run around tribal immunity must also fail" because

16  "tribes, not the federal government, retain authority to

17  determine tribal membership."  Id.  A plaintiff cannot simply sue

18  the federal government in an attempt to avoid tribal immunity

19  with respect to intra-tribal affairs.  The Tribal Council removed

20  plaintiff from his leadership position and plaintiff's avenue to

21          [3]   Nor do the other cases plaintiff cites aid his

22  position.  In Salazar, a tribal faction challenged only the BIA's
    determination of the faction it would recognize for government-

23  to-government relations and the district court did not identify
    the controlling standard for review under the APA.  See 967 F.

24  Supp. 2d at 89.  Payton v. U.S. Department of Agriculture
    involved a farmer's challenge under the APA of a Department of

25  Agriculture decision and thus tribal sovereignty and immunity
    were not implicated.  337 F.3d 1163, 1165, 1168 (10th Cir. 2003).

26  The BIA decision reviewed in Bernard v. U.S. Department of

27  Interior, dealt with the BIA's own alleged misconduct and
    similarly did not involve tribal sovereignty or immunity.  674

28  F.3d 904, 906-07 (8th Cir. 2012).

1  challenge that action remains with the Tribe.

2          Accordingly, because the court lacks jurisdiction to

3  hear plaintiff's § 1983 and ICRA claims and plaintiff fails to

4  allege a cognizable claim under the APA over which the court

5  could exercise jurisdiction, the court must grant defendants'

6  motion to dismiss.  Because the court finds that all of

7  plaintiff's claims are subject to dismissal, the court need not

8  address defendants' alternative argument that plaintiff lacks

9  Article III standing.

10          IT IS THEREFORE ORDERED that defendants' motion to

11  dismiss be, and the same hereby is, GRANTED.

12          Plaintiff has twenty days from the date this Order is

13  signed to file an amended complaint, if he can do so consistent

14  with this Order.

15  Dated:   October 7, 2015

16

17                     WILLIAM B. SHUBB
                       UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28